### STANBROUGH *v.* M'CALL.

Where an order of seizure and sale, issued for the amount of a note secured by mortgage and containing the pact *de non alienando*, is enjoined by a third person, alleging himself to be the owner of the property mortgaged by a purchase since the date of the mortgage, who, after a judgment rendered against him in the first instance, protracts the litigation by repeated appeals, such third person cannot avail himself of the time which elapsed while the plaintiff was thus judicially restrained from prosecuting his action, as part of the period necessary to extinguish the note by prescription. *Per Curiam:* One who, under the pretence of rights which have been adjudged to be unfounded, unlawfully uses the process of a court to restrain another in the prosecution of a right, cannot avail himself of the delay, which his own wrong has occasioned, to defeat that right.

One to whom a note belonging to a succession has been transferred, by the curator, irregularly, and to the detriment of the creditors or heirs of the deceased, will be considered as a trustee for them; but his possession of the note, as holder, will enable him to sue, for the purpose of arresting prescription.

APPEAL from the District Court of Madison, *Selby*, J. *Thomas*, *Snyder*, *Bemiss* and *Stacy*, for the appellant. *Stockton* and *Steele*, for the defendant and opponent. The judgment of the court* was pronounced by

SLIDELL, J. The plaintiff has been endeavoring, for seven years, to enforce his rights as a mortgage creditor upon a tract of land. In this protracted litigation he was at first opposed by *Collier*, represented by *Stockton*, as his counsel; and subsequently, by *Stockton*, in his own right.

This suit was commenced in 1842, by an order of seizure and sale, upon a note which fell due in January, 1842, and which, with two others, was given by *M'Call* to his vendor, *David Stanbrough*, curator of the succession of *Jesse Harper*. To secure these notes *M'Call* gave a mortgage, with a covenant *de non alienando*. Notice of the order of seizure and sale was served upon *M'Call*. *Collier* obtained an injunction against the execution of the order of seizure and sale, alleging that he was himself the owner of all the notes, having purchased them at a sale by the marshal of the United States; and also that, *Josiah Stanbrough* had no title to the note, because *David Stanbrough*, the curator of the succession of *Harper*, and who was the payee of the note, had no authority to transfer it. In that controversy there was judgment in favor of *Josiah Stanbrough*, which was affirmed by the Supreme Court of this State, in

---

*This opinion was pronounced in March, but suspended by the application for a re hearing. In March, all the judges were present.

1843; and by the Supreme Court of the United States, in 1848. In that litigation, *Stockton* was the attorney and counsel of· *Collier*. See this case as reported in 6 Rob. 433, and 6 Howard, p. 14.

In 1846, *Stockton* brought a suit, in his individual name, against *David Stanbrough*, curator, in which, after reciting that the curator had possession and claimed the ownership of the two other mortgage notes, and was proceeding upon them by order of seizure and sale, he alleged that he, *Stockton*, had become the owner of the three notes, by assignment from *Collier*, in 1843; that *M' Call* was insolvent, and that the land was his only security for the debt. Upon these allegations *Stockton* obtained an injunction, arresting the execution of the writ of seizure and sale obtained by the curator.

After the final decree, in 1848, by the Supreme Court of the United States in favor of *Josiah Stanbrough*, and before any mandate or decree of the Supreme Court of the State, restoring the jurisdiction of the District court with regard to *Collier's* case, had been recorded in the District court, *Stockton* appeared in the present suit, by third opposition, and presented a new obstacle to the prosecution of the order of seizure and sale, obtained in 1842, and which had been suspended during seven years by the injunction obtained by *Collier*. The grounds alleged in the opposition are, that *Stockton* had become the owner of the mortgaged promises by the purchase from *Compton*, in January, 1847, who purchased from *M' Call* in January, 1842; that the note, upon which the order of seizure and sale was obtained, was extinguished by prescription; and that *David Stanbrough*, curator, had no authority to transfer the note. There was judgment in favor of *Stockton ;* and from that judgment the plaintiff prosecutes the present appeal.

From the facts which we have stated it results that, from 1842, down to at least 1848, the plaintiff was judicially restrained from prosecuting his suit; and this restraint, from September, 1843, must be considered the personal act of *Stockton*. For although he acted at first only as the counsel of *Collier* in the injunction obtained by him, *Stockton* became, by the assignment of *Collier*, the real plaintiff in injunction, and must be considered, from the date of the assignment, as the true party who prosecuted the suit in the court below, who took a suspensive appeal to the Supreme Court, and afterwards carried the cause by writ of error to the Supreme Court of the United States. If *Collier* had not arrested the plaintiff in the execution of the order of seizure and sale, and *Stockton*, succeeding to his rights, had not continued this judicial restraint, the plaintiff would, years ago, have obtained a sale of the land and received its proceeds. The question then presents itself whether one, who, under pretence of rights which have been adjudged to be unfounded, has unlawfully used the process of a court of a justice to restrain another in the prosecution of a right, can avail himself of the delay which his own wrong has occasioned to defeat that right? An affirmative answer to this proposition would involve principles shocking to reason and natural justice. It is equally repugnant to authority.

It has been said, in argument, that, in the prescription *liberandi causa*, good faith is not required. As the general rule, this is true. C. C. 3515. The man who knows that he has not paid a debt may plead prescription. In doing so, he offends good conscience ; yet the law, acting upon considerations of public policy, forbids the creditor to put him on his oath, and compel him to declare whether the debt has been paid or not. But the rule has its exceptions. Thus, if having confidence in my debtor, I hand him the evidence of my debt, in order that he may attempt to

STANBROUGH
*v.*
M'CALE.

collect it from other parties who are also bound to me, and my debtor should take advantage of my confidence and withhold it from me, upon false pretences, until the "delai liberatoire" had elapsed, he would not be permitted to escape, upon the plea of prescription, because, by his own wrong, he had prevented me from acting. See Nougier, Des Lettres de Change, vol. 1, p. 61. See also Troplong, Prescrip. § 646.

The rule that, he who thus paralizes the right of another shall not benefit by. his own act to prescribe against that right, is not peculiar to our own jurisprudence ; but, as it has its foundation in reason and justice, we find it adopted as a principle of equity in England and in the, United States. In, *Putney* v. *Warren,* 6 Vesey, 73, it was held that where a party applies to a court of equity, and carries on an unfounded litigation, protracted under circumstances and for a length of time, which deprives his adversary of his legal rights, the court of equity considers that it should itself supply and administer, within its own jurisdiction, a substitute for that legal right, of which the party so prosecuting an unfounded claim has deprived his adversary. See the *East India Co.* v. *Cumpron,* 11, Bligh. 158 &c. Story's Equity, vol. 2, 1526.

The appellee questions the validity of the transfer of the note by *David Stanbrough,* curator, to *Jesse Stanbrough,* who endorsed it to the plaintiff, on. the ground that it was the property of a succession, and that no judicial authorization for the transfer has been proved. If the transfer was made irregularly, and to the detriment of the, creditors. or heirs of the succession, the plaintiff would be deemed a trustee for them; but his possession, as holder, would certainly enable him to act, for the purpose of arresting prescription.

In order that the opponent may be protected from any further disturbance by. the succession of *Harper,* if he should think proper to pay the debt, and that the proceeds of the mortgaged property, if sold, may go to the party really entitled to, them, we will make provision in our decree.

It is decreed that the judgment of the court below, upon the opposition of *Stockton,* be reversed ; that the plaintiff have leave to proceed in the execution of the order. of seizure and sale; that the proceeds of the sale of the mortgaged property. described in the plaintiff's petition be brought by the sheriff into court, for distribution, contradictorily with the succession of *Jesse Harper,* upon due notice given to the proper representative of said succession ; and that, if the said *Stockton.* desires to pay the amount of the mortgage, claim, he may deposit the same in court, subject to the order of the court, to be rendered contradictorily with said. succession of *Jesse Harper.* And it is further decreed that, said *Stockton* pay the costs of this appeal; and, that the costs of the opposition in the court below, be, paid by the plaintiff.