## GORDON v. GILFOIL.

A. gave his promissory notes, payable Jan. 1, 1868, and Jan. 1, 1869, and to secure the payment thereof executed a mortgage on certain lands in Louisiana, which he had held in community with his wife, then deceased. In proceedings upon an order of seizure and sale, the holder of the note purchased the property, and brought in a State court a petitory action therefor and for rents and profits. A. answered, setting up the nullity of the proceedings, by reason of the non-compliance by the sheriff with the requirements of the statute. B., his son, intervened, setting up such nullity, and also claiming one-half of the property as the heir of his deceased mother. A. having died, the plaintiff filed a supplemental petition against B., which contained no prayer for a personal judgment against him, nor did it set up the debt itself as a ground of claim or action. Judgment was rendered in favor of B., upon the ground that he was the owner of an undivided half of the property, and that the sale by the sheriff was void, because he had never had the property in his possession. The holder of the notes thereupon, Oct. 19, 1876, brought suit in the Circuit Court of the United States against B., charging him on the notes as universal heir of A., averring that he was liable for the debt, because as such heir he had taken

possession of the estate and property of A., and praying a decree for the debt, with mortgage lien and privilege out of the mortgage property. B. set up the prescription of five years, and averred that the order of seizure and sale was a merger of the original debt, and that the executory proceedings were still pending ; that he had taken possession of one half of the property as heir of his mother, and of the other half as the beneficiary heir of his father ; but denied that such possession made him liable for the debt. He furthermore set up the said judgment as a bar. *Held*, 1. That the order of seizure and sale did not merge the debt, but that it was a judicial demand, continuing in opera·tion until rendered effective by a valid sale of the property, and that the plea of prescription could not, therefore, be sustained. 2. That the pendency of a suit in a State court does not abate a suit upon the same cause of action in a court of the United States. 3. That the said judgment is not a bar to this suit. 4. That under articles 371 and 977 of the Civil Code of Louisiana, if a husband after the death of his wife mortgages community property for his debt, and afterwards dies while their son and heir is still a minor, but after he has been emancipated, the latter does not render himself liable for the debt as universal heir of his father, by simply taking possession of the property and receiving to his own use the rents and profits thereof. 5. That the complainant is entitled to a decree for the sale of one undivided half of the mortgaged property, to pay said notes and interest.

Appeal from the Circuit Court of the United States for the District of Louisiana.

The facts are stated in the opinion of the court.

*Mr. Henry B. Kelly* and *Mr. Henry L. Lazarus* for the appellant.

*Mr. Samuel R. Walker* for the appellee.

Mr. Justice Bradley delivered the opinion of the court.

In January, 1867, Patrick Gilfoil, of Madison Parish, La., being indebted to Gordon & Castillo, of New Orleans, in the sum of $4,500, or thereabouts, gave them his promissory notes therefor, payable on the 1st of January, 1868, and 1st of January, 1869, secured by a mortgage on his cotton plantation in the parish of Madison. The property was in fact community property, and Gilfoil's wife had died the year preceding this transaction, leaving a minor son, James H. Gilfoil, as her only heir-at-law. The notes not being paid, Mary Cartwright Gordon, the holder thereof, in February, 1869, filed a petition in the District Court for the parish of Madison for an order of seizure and sale of the mortgaged premises, and executory process was issued accordingly, and on the 3d of July, 1869, the sheriff sold the property to Mrs. Gordon for the sum of

$600, and executed to her a deed therefor; but no possession was delivered.

In January, 1872, Mrs. Gordon instituted a suit in the District Court of the parish against Patrick Gilfoil, to recover the land, and the rent thereof from the time of the sheriff's sale. This suit was known as No. 772.

To the petition in this suit Patrick Gilfoil filed an answer containing a general denial, and specially denying that the plaintiff had any good and valid title. By a supplemental answer, he particularized the cause of nullity of plaintiff's title to be, that the executory proceeding was in every respect illegal; that no service of notice of the order of seizure and sale, nor any notice of seizure, nor any appraisement, was legally made, nor any of the forms of law observed by the sheriff in making the sale; and that no due and valid advertisement was made.

Patrick Gilfoil died Oct. 2, 1872. Before his death, in May, 1872, his son, James H. Gilfoil, by petition intervened in the suit, claiming that the property was community property, and that he was the legal owner of one undivided half thereof by inheritance from his deceased mother; and praying judgment accordingly.

In April, 1874, Mrs. Gordon filed an amended and supplemental petition, alleging the death of Patrick Gilfoil, and that James H. Gilfoil had possessed himself of the property, claiming to be the legitimate heir of Patrick, and refused to deliver possession thereof. Wherefore the petitioner prayed that James H. Gilfoil be made a party to the suit; and that petitioner recover of him judgment as prayed for in her original petition, and the rents since the death of Patrick Gilfoil; and. for general relief. She also filed an answer to James H. Gilfoil's petition of intervention.

James H. Gilfoil filed an answer to the supplemental petition, as well as to the original petition, denying all the allegations thereof, and specially denying any legal sale of the land. By. a further answer he pleaded prescription of three and five years, and prescription generally; alleging that the debt was prescribed when Patrick Gilfoil acknowledged it.

The case having gone to trial in November, 1874, the District

Court decided in favor of the plaintiff, Mrs. Gordon, as to one half of the property, and as to the other half, decided in favor of the defendant; but on appeal to the Supreme Court of Louisiana, the judgment in favor of the plaintiff was reversed, the court deciding that the sale by the sheriff under the executory process was void, because the sheriff at no time had the mortgaged property in his possession. They held that an actual corporal possession of property seized must take place in order to make a sheriff's sale valid, and to render a compliance with the law complete; that the sheriff must have the property in his own possession and under his own control, or in the possession and under the control of some person duly authorized by him. The judgment in favor of the defendant was affirmed, and judgment was given in his favor generally. The case is reported in 27 La. Ann. 265.

This judgment of the Supreme Court was rendered March 8, 1875.

Thereupon, on the 19th of October, 1876, the present suit was commenced in the Circuit Court of the United States, against James H. Gilfoil, charging him on the notes as universal heir of Patrick Gilfoil, and praying judgment for the amount of the debt, with mortgage lien and privilege out of the mortgaged premises.

The defendant pleaded as follows: "1. That the said petition discloses no cause of action against this respondent. 2. That this court is without jurisdiction, for the reason that said plaintiff, having elected to sue in the court of the State of Louisiana, the thirteenth district court, in and for the parish of Madison, and jurisdiction of this cause has already vested in the said State court. 3. That the obligations sued on are prescribed by the lapse of more than five years."

The court, upon argument, ordered that the plea of prescription be referred to the merits, and that the plaintiff be allowed to amend her petition by setting up the facts upon which she relied to interrupt prescription.

This she did by setting up the order of seizure and sale; and she claimed that James H. Gilfoil was liable for the debt, because he, as heir of Patrick Gilfoil, took possession of his estate and property.

The defendant filed an answer, denying the supplemental petition generally, denying the plaintiff's ownership of the notes, and setting up the order of seizure and sale as a merger of the original debt; and further, that as said proceedings had never been discontinued, the Circuit Court was without jurisdiction.

By a supplemental and amended answer he set up his ownership in one undivided half of the mortgaged property as heir of his mother; and as to the other half he averred that, as administrator and sole beneficiary heir of his father (Patrick Gilfoil), he became possessor thereof as belonging to his father's succession; but denied that he had taken such possession as would make him liable personally for any debt or mortgage claim against the property, or for any of the rents and revenues thereof. He again set up the order of seizure and sale as a merger of the debt; and averred that the said executory proceedings were still pending in the District Court. He also set up and annexed to his answer the proceedings and judgment in the suit No. 772, by virtue of which he insisted that the matters in controversy in this suit had become *res adjudicata ;* and the cause came on for trial upon the issues thus presented by the pleadings.

The proceedings on the order of seizure and sale, and in the suit No. 772 in the District Court and in the Supreme Court of Louisiana, as also the mortgage and sheriff's deed, were either admitted or proved. Certain evidence taken in the latter case, and certified with the other proceedings, was also admitted by stipulation of the parties. This was all the evidence adduced at the trial in the Circuit Court.

The evidence admitted by stipulation was to the effect, amongst other things, that James H. Gilfoil resided with his father on the property in question at the time of the latter's death, and still resided there in November, 1874, and had possession of the said property; that Patrick Gilfoil died Oct. 2, 1872; that Catharine his wife died April 13, 1866; that the defendant was her son and only heir; that he was fifteen years of age in 1867; but that he was emancipated before his intervention was filed in the suit No. 772 (being a minor).

The Circuit Court gave judgment for the defendant, but on

what ground does not appear.   The ground taken in this court by the appellee in support of the judgment is, first, the point of *res judicata ;* and, secondly, the prescription of five years.   The appellant attempts to controvert these grounds of defence by showing, as to the first, that the question presented in the present suit is not the same question which was decided between the parties in the suit No. 772, and that the order of seizure and sale is no merger of the original debt; as to the second, that the alleged prescription was interrupted and suspended by the order of seizure and sale, and the subsequent proceedings in reference thereto.

The first matter to be considered, therefore, is whether the question endeavored to be raised in this suit was or was not passed upon or necessarily involved in suit No. 772.

The object of the present suit is to charge the defendant, as universal heir of his father, Patrick Gilfoil, with the entire debt, on the ground that the defendant as such heir possessed himself of his father's interest in the plantation.   Was this question passed upon or necessarily involved in suit No. 772? From the recital of the pleadings in that case it is apparent that the primary and main object was to maintain the plaintiff's title to, and to recover, the land itself under the sheriff's sale, made by virtue of executory process in 1869.   The defence of Patrick Gilfoil, prior to his death, was that the sale was absolutely void by reason of non-compliance with the forms of law required in such cases.   The defence of James H. Gilfoil, as intervener, was, as to one undivided half of the land, that it belonged to his mother by right of community, and was inherited by him from her ; and as to the other undivided half, that the sheriff's sale was void for want of possession, and that the debt for which it was sold was prescribed.   The decision of the Supreme Court was with the defendant on both points ; namely, first, that the defendant was owner of one undivided half of the land by virtue of his inheritance from his mother, who was decreed to have been the undivided half owner or partner in community with her husband; secondly, that the sheriff's sale was void for want of actual service and possession. From all that appears by the record, there was no adjudication on the question of defendant's liability as arising from his tak-

ing and keeping possession of one undivided half of the property as heir of his father, unless such adjudication is to be implied from the pleadings. A more particular examination of these is necessary to determine this matter.

The original petition simply claimed ownership of the property, alleged that Patrick Gilfoil was in unlawful possession of it as a trespasser, and prayed that the petitioner's title might be recognized, that she might have judgment for the property, and a judgment against Patrick Gilfoil for the rents and revenues. It was almost the exact equivalent of the common-law action of ejectment, or rather of a real action involving the question of title only.

After the intervention of James H. Gilfoil, and the death of Patrick, the plaintiff answered the intervener's claim by denying that he was the legal heir either of Patrick or his wife, and denying any right of community in the latter, alleging that the property was the separate property of Patrick; but if there was any community, alleging that the debt for which the property was sold was a community debt, and as such the property was liable for it, and was properly and legally sold to pay the same.

By her supplementary petition against James, the plaintiff alleged that he was then in possession of the property, and claimed to be the legitimate heir of Patrick, and refused to deliver the possession; and that if Patrick left any succession at his death, it was taken possession of by James without any process of law, and used for his own purposes, whereby he became an intermeddler, thereby rendering himself liable for all the debts of the succession, and especially personally bound for the rents and revenues of the property in question from the date of the unlawful possession thereof by Patrick. But the prayer was only that the petitioner might recover of James judgment as prayed for in the original petition, and the rents and revenues since the death of Patrick. The petition contained no prayer for a personal judgment against him; and the debt itself was not set up as a ground of claim or action, in either the original or supplemental petition.

It seems plain, therefore, that the character of the suit was consistently maintained throughout as a petitory suit for the

property, and for an account of its rents and revenues. · No judgment was sought by the plaintiff against the defendant for the debt. His supposed liability for the debts of the succession on account of possessing himself thereof without any process of law was only stated incidentally, by way of rebutting his pretension of being other than a mere· trespasser on the property. His liability for the debt was not put in issue by the pleadings, and was not considered by the court. The question of the title alone was the burden of the action, and was all that was decided in the judgment.

We are of opinion, therefore, that the plea of *res judicata* is not maintained.

We are also of opinion that the order of seizure and sale effected no merger of the debt. That order was made upon the act of mortgage as an authentic instrument importing confession of judgment. Code of Practice, arts. 732, &c. The order was a mere award of executory process, and did not affect in the slightest degree the nature or dignity of the primary securities for the debt. If seizure and sale of mortgaged property do not result in full satisfaction of the debt, suit has to be brought on the primary security in order to recover the balance. *Harrod* v. *Voorhies's Adm'x*, 16 La. 254; *Humphreys* v. *Brown*, 19 La. Ann. 158.

The next question is, whether the plea of prescription has been sustained in this case. Five years is the regular time of prescription against bills of exchange and promissory notes payable to order or bearer. Civ. Code, art. 3540. And this prescription runs against minors and interdicted persons. Art. 3541. The last of the notes upon which the defendant is sought to be made liable matured on the 1st of January, 1869. The claim, therefore, became prescribed on the 1st of January. 1874, unless the prescription was interrupted by some lawful cause. A legal interruption takes place by a judicial demand made upon the debtor. The plaintiff alleges that prescription in this case was interrupted by service of notice of the order of seizure and sale upon Patrick Gilfoil, on the twenty-fifth day of March, 1869, and that such interruption continued at least until the death of Patrick .Gilfoil, Oct. 2, 1872, because the plaintiff could at any time, after the writ had expired, or after

the sale under it had been set aside, issue an *alias* writ without a new order. The plaintiff contends, in other words, that an order for seizure and sale, served on the debtor, is a judicial demand, the same as an ordinary suit ; and that it continues in operation as such until it has been rendered effective by a valid sale. This position seems to be sustained by several decisions of the Supreme Court of Louisiana. *Stanbrough* v. *McCall*, 4 La. Ann. 322 ; *Fortier* v. *Zimpel*, 6 id. 53 ; *Rhea* v. *Taylor*, 8 id. 23 ; *Walker* v. *Lee*, 20 id. 192; *Roupe* v. *Carradin*, id. 244 ; *Hebert* v. *Chastant*, 22 id. 152 ; 23 id. 687. In *Roupe* v. *Carradin* (20 id. 244), the note matured in January, 1858, and an order of seizure and sale was made and served in June, 1858, a writ was issued and a levy was made, but no sale took place. In 1867 (nine years afterwards), a new writ was issued on which an injunction was obtained on two grounds : first, a claim of homestead; secondly, prescription. Both of these grounds were overruled. As to the latter, the court say : " The plea of prescription cannot avail ; it was interrupted by the order of seizure and sale, duly notified to the plaintiff, as we have recently decided in *Walker* v. *Lee*."

Numerous authorities also show that the setting aside of a sale for irregularity does not affect the order of seizure and sale, but a new writ may issue upon it. In *Citizens' Bank* v. *Dixey* (21 id. 32), the court say : " This is an appeal from an order of seizure and sale. It is well settled that on such an appeal the only question is, whether there was before the judge *a quo* sufficient evidence to authorize the fiat. The order cannot be set aside on appeal, on account of subsequent irregularities in the execution of it, as by not notifying the proper parties or otherwise. *Dodd* v. *Crain and Another*, 6 Rob. (La.) 60." In *Fortier* v. *Zimpel* (6 La. Ann. 54), there were three successive writs issued upon the same order. The first was stayed by the plaintiff, and an *alias* issued. This was annulled, on the ground of being issued for too large a sum. Plaintiff, considering the original petition still in court, then applied for a *pluries* writ, which was granted. A sale made under this writ, though strenuously contested, was homologated and confirmed. In *Riddel* v. *Ebinger* (6 id. 407), the sale was sought to be annulled. The court, amongst other things, say : " The writ

under which the sale was made was an *alias*, and it is contended that the order of seizure was a judgment only so far as the original writ was concerned ; that it expired when the writ was returned, and that no other writ could issue without a new order of court. This objection has so often been held unfounded by our predecessors and ourselves, that we deem it unnecessary to do more than to refer to some of the cases in point." The court then referred to *Ursuline Nuns* v. *Depassau*, 2 Mart. N. S. (La.) 646 ; *Mader* v. *Fox*, 15 La. 159 ; *Harrod* v. *Voorhies*, 16 id. 254 ; *Fortier* v. *Zimpel*, 6 La. Ann. 53. In *Stanborough* v. *McCall* (4 id. 327), the court explain the reason why proceedings on an order of seizure and sale interrupt the prescription of the personal action for the same debt. They say : " The rule harmonizes with the theory of prescription, which has its basis in the presumption of renunciation on the part of him who neglects his rights, and which presumption cannot be entertained against a party who is struggling to collect a debt, and is not *sui juris contemptor*. The interruption, then, created by the institution of one species of action must also be considered as continuous, and as preserving the personal action while the hypothecary action is in course of prosecution.

These cases, with others that might be cited, seem fully to establish the position of the plaintiff, and we think that the position is clearly applicable to the present case. In 1869, soon after the debt became due, the plaintiff filed her petition for an order of seizure and sale. The order was granted and served on the debtor, then in possession of the mortgaged premises, and the property was sold. From that time to the debtor's death in October, 1872, and afterwards, until judgment was given against her in March, 1875, she was engaged in a continuous struggle in the courts to obtain the fruits of that order and sale. The sale was held to be void by the irregular proceedings of the sheriff ; and according to the decisions of the State courts, her petition and the order made thereon were still in force, and, if she pleased, she could have applied for the issue of another writ thereon. It may be that it would have been necessary to have the petition and order amended ; but that would not disaffirm the pendency of the proceedings or the jurisdiction of the court.

We think, therefore, that the proceeding for seizure and sale interrupted the prescription of the personal action on the notes; and that this interruption continued up to the time when the final judgment of the Supreme Court of Louisiana was rendered against the plaintiff. The present action was commenced about a year and a half afterwards; and therefore, in our judgment, the plea of prescription must fail.

It may be proper here also to observe, although the point was not pressed in the argument, that the exception to the jurisdiction of the Circuit Court is destitute of foundation. The suggestion was, that, as the proceedings in the order of seizure and sale were still pending in the District Court, the debt could not be prosecuted in the Circuit Court of the United States. But it has been frequently held that the pendency of a suit in a State court is no ground even for a plea in abatement to a suit upon the same matter in a Federal court. What effect the bringing of this suit, *via ordinaria,* may have had on the order of seizure and sale, it is not necessary to determine. It is possible that it superseded it. But the pendency of that proceeding, when the suit was commenced, cannot affect the validity of the proceedings in this suit, nor the jurisdiction of the court in respect thereof.

The only remaining question is, whether the defendant has rendered himself liable for the notes by taking possession of the plantation and receiving to his own use the rents and revenues thereof. At the time of his father's death the defendant was only nineteen, or, at most, twenty years of age. Art. 977 of the Civil Code declares that "it shall not be necessary for minor heirs to make any formal acceptance of a succession that may fall to them; but such acceptance shall be considered as made for them with benefit of inventory by operation of law, and shall in all respects have the force and effect of a formal acceptance." Heirs having the benefit of inventory are called beneficial heirs, and are not personally liable for the debts of the succession. This shows that the defendant, though he took possession of his father's property, did not thereby make himself personally liable for the notes in suit, unless the fact that he was emancipated before his father's death, and while yet a minor, renders him so liable. Art. 370 of the Code

declares that "the minor who is emancipated has the full administration of his estate, and may pass all acts which are confined to such administration, grant leases, receive his revenues and moneys which may be due him, and give receipts for the same." But art. 371 adds, that "he cannot bind himself legally by promise or obligation for any sum exceeding the amount of one year of his revenue." The position of the plaintiff is, that the defendant, by taking possession of his father's undivided half of the mortgaged property, made himself liable for the whole debt in suit. It seems to us that this would be in contravention of the spirit, if not the letter, of arts. 371 and 977 of the Code.

Besides, the defendant was owner of one undivided half of the property as heir of his mother; and he could not possess himself of his own property without, at the same time, possessing himself of the other half. Under these circumstances, considering his status as a minor at the time of his father's death, the sort of possession which he assumed ought not to be turned to his disadvantage as any evidence of an intention to accept his father's succession as universal heir.

The conclusion to which we have come is, that the plaintiff cannot have any personal decree against the defendant for the amount of the debt; but that she is entitled to a decree for the foreclosure and sale of one undivided half part of the plantation covered by the mortgage. The decree of the Circuit Court is reversed, and the cause remanded to that court, with directions to render a decree in accordance with this opinion.

Each party will be decreed to pay his and her own costs, both in this court and in the Circuit Court; and it is

*So ordered.*