## No. 9912.

### THOMAS MIX VS. HIS CREDITORS.

The plea of *lis pendens* is a declinatory exception, and cannot be permitted in an answer to the merits; and if incorporated in an answer, it is thereby waived and loses its efficacy as an exception.

An exception to the jurisdiction of the court *ratione personæ* is likewise a declinatory exception, and must be pleaded *in limine litis* and before answering the merits.

The terms and stipulations contained in act of mortgage consented, as a collateral security for an *anticipated* indebtedness for advances *to be* made in aid of the cultivation of the crop of cotton, must control the destination of the proceeds thereof; and same cannot be otherwise imputed or applied without the consent of the debtor and mortgagor.

APPEAL from the Fifteenth District Court, Parish of Pointe Coupée. *Voist*, J.

*Olivier O. Prevosty* for Plaintiff and Appellee.

*James Vignes, Jr.* and *Martin Voorhies* contra.

The opinion of the Court was delivered by

WATKINS, J. Thomas Mix made a *cessio bonorum* in March, 1885, and obtained the usual order staying all proceedings against his person and property.

He filed schedules of his property and lists of creditors, privileged and ordinary. At the meeting of his creditors he was chosen his own syndic. He was duly qualified, and on the 10th of October, 1885, obtained an order for the sale of the immovables, and the property was advertised to be sold on the 7th of January, 1886. An order was subsequently obtained by *ordinary* creditors, postponing the sale, and thereafter the present rule was taken by the plaintiffs, who are *ordinary* creditors of Mix, the insolvent, figuring on his schedule, against P. G. Gibert, the syndic, and recorder of mortgages of the parish of Pointe

Coupée, for the erasure and cancellation of his (Gibert's) special mortgage inscribed against the immovable property surrendered by the insolvent and advertised for sale, as above related.

The defendant, Gibert, is a recognized creditor of Mix, and appears on the schedule as a creditor with mortgage on the property referred to.

The ground on which the plaintiffs in rule demand the cancellation and erasure of Gibert's mortgage is that it has been paid; that the property surrendered is not sufficient to pay fifty cents on the dollar of the insolvent's debts that are due them, and that they are interested in the property, thus *apparently* encumbered, selling for the best attainable price.

They further represent that unless this mortgage inscription be erased, it will prejudicially affect its sale value to their prejudice and by diminishing the assets of the insolvent's estate applicable to *ordinary* debts.

The amount of Gibert's mortgage debt is $5000, while the estimated value of the property is only $3000.

I.

To this proceeding defendant filed an appearance, which he considered an exception, but which plaintiffs ask the court to treat as an answer.

It is of the following purport, viz: That in the rule to show cause, Gibert appears, stating: "Now comes P. G. Gibert, one of the defendants in the rule taken by E. Marqueze & Co., ordering him to show cause, on the first Monday in April, 1886, why the inscription of his mortgage against Thomas Mix, insolvent, should not be erased and the same declared extinguished, and who, for *answer* thereto, excepts on the following grounds, namely:

"1st. The respondent is a citizen of the Republic of France, and has brought suit in the United States Circuit Court, entitled, P. G. Gibert vs. Thomas Mix, syndic, to establish the validity of his debt and mortgage, and which is still pending in said court.

"2d. That said mortgage is good and valid, as it was given to secure payment of two promissory notes and advances made to said Thomas Mix in 1884, which are still due and unpaid.

"3d. That proceedings to *annul* and erase mortgages bearing on an insolvent estate cannot be brought by the *ordinary* creditors by rule, on motion, as in this instance; but must be by direct action, especially when they have other remedies.

"4th. That respondent can only be cited at his place of domicile, and can only be compelled to answer when properly cited."

40

The sheriff's return shows that the defendant was personally served on the 11th of February, 1886.

The evidence was taken on the exceptions and rule to show cause at one and the same time.

Testimony was offered for the purpose of showing the pendency of the suit in the United States Circuit Court when the rule was filed, to which objection was urged by plaintiff, to the effect that by pleading to the suits defendant *waived his dilatory pleas*.

This objection was overruled by the court, and the plaintiff reserved a bill of exceptions.

In treating of declinatory exceptions, the Code of Practice says:

" There are two kinds of declinatory exceptions—

" 1st. When the exception is taken to the competency of the judge, pursuant to the rules above prescribed.

" 2d. When it arises from the fact of *another suit* being pending between the same parties, for the same object, and growing out of the same cause of action, before *another* court of competent jurisdiction." C. P. 335.

The *declinatory* is a species of *dilatory* exception. C. P. 331.

On the subject of *litis pendens* the Federal jurisprudence harmonizes with our own. 93 U. S. 554, Staunton vs. Embry; 99 U. S. 169, Gordon vs. Gilford.

Since the opinion of this Court was announced in Chaffe vs. Ludeling, 34 Ann. 966, no dilatory exception has been permitted *in an answer*, " unless, at least, the exception was pleaded *prior* to any plea to the merits." That decision quotes from Act 53 of 1839, whereby the conflicting provisions of C. P. 333 and 336 are reconciled. 35 Ann. 281, Boone vs. Carroll.

The defendant's second exception is an answer to the merits. It avers that the mortgage and debt are good and valid, and the debt is still due and unpaid.

Under the authorities quoted, the dilatory exception was thereby waived, and plaintiff's objection should have been sustained.

The same is perfectly true, in respect to plaintiffs' right to proceed by rule, as they did. It was competent for the defendant to waive any valid objection there may have been, to such proceeding, other than the want of jurisdiction of the court *ratione materiæ*, which is not claimed.

While treating of the effect of defendant's exceptions, we may just as well dispose of the want of jurisdiction of the lower court, *ratione personæ*, that is urged.

It is a general rule that one must be sued before his own judge, that is to say, before the judge having jurisdiction over the place where the defendant has his domicile or residence. C. P. 162.

But, if he be sued before a judge whose jurisdiction does not extend to the place of his domicile, and he plead to the merits, the judgment rendered will be valid. C. P. 93.

This is not an open question. 31 Ann. 90, Phipps vs. Snodgrass; C. P. 93; 333; 334; 335 and 336; 31 Ann. 582, Goodrich vs. Hunter; 29 Ann. 194, Marqueze & Co. vs. LeBlanc; 33 Ann. 655, Stevenson vs. Whitney.

In the instant case the defendant excepted and answered at one and the same time. He could not possibly plead to the jurisdiction of the Court *ratione personœ*, and at the same time tender an issue for it to try. C. P. 333.

The case is thus left standing on the answer.

## II.

The material facts to be considered are the following:

On February 20, 1884, Gibert rendered Mix an account current of transactions of 1883, showing a debit balance of $7529 20.

Mix executed two promissory notes—one for $3000 and the other for $5421 64—payable to the order of Gibert, on the 1st and 15th of November, 1884; and, therefore, Gibert gave him a receipt "*in full settlement of account rendered this day, showing balance due of* $7539 20."

There was added into these notes the sum of $882 44, what, doubtless, represented the discount.

A new account was opened. and the debit balance against Mix on March 25 was $1189 10; on June 30, 1884, $879 12; on August 23, 1884, $3281 73; on November 22, 1884, $8103 12; on February 7, 1885, $5066 80.

With this last balance the account is closed.

On the 1st of May, 1884, Mix executed a mortgage in favor of Gibert, on his plantation and improvements situated on False river, in the parish of Pointe Coupée, to secure the payment of two *other* promissory notes, of *even date therewith*, one for $2500, due and payable on the 1st of February, 1885; and the other for $3000, due and payable on the 1st of March, 1885. Said notes were delivered to Gibert, who is designated in the act as payee and mortgagee.

The consideration of those notes is set out fully in the act, to be to enable Mix, the mortgagor, to cultivate and gather his crop of cotton of that year, and to carry on his mercantile business, for which pur-

pose he would require advances of supplies and ready money to the extent of $5000, which Gibert, the mortgagee, undertook to furnish.

The act recites: "Now, therefore, in liquidation of said advances *to be made* by the said P. G. Gibert to the said Thomas Mix, to the extent of the aforesaid amount of $5000, in such sums as he, the said Mix, shall deem proper; and in order to facilitate to said P. G. Gibert the negotiation and collection thereof, the said Mix has presented his two promissory notes dated this day," etc.

As a further security for their payment, Mix obligated himself to ship to Gibert the entire crop of cotton to be raised on said plantation, and such other cotton as he should control in his business during the then current year.

The act contains the further clause, viz: "It is further stipulated and covenanted that if any advances be made *beyond those herein stipulated, they* are to be paid out of the *first* proceeds coming to hand, and that *imputation of payment shall be first made to all open accounts that may be existing between the contracting parties,* leaving the liabilities *herein* represented by the promissory notes to be paid out of *subsequent* proceeds."

Recurring to the various accounts that Gibert rendered to Mix, at different dates, it appears that there was at no time a debit balance against Mix until the 22d of November, 1884, when it was $8103 12.

An examination of that account shows that on November 4, 1884— the date when Mix's $3000 notes went to maturity—the amount of it, with interest, was debited to Mix; and on the 18th of the same month, when the note for $5431 64 became due, the amount of it, with interest, was debited to him also.

These amounts and interests aggregate $8450 42.

Deducting the balance of *debit* against Mix, on account of date November 22, 1784, and there would be a *credit* balance of $347 30; or, in other words, there was not only nothing due by Mix, at that date, on his 1884 account—represented by the two notes and mortgage of May 1, 1884—but there should be, and really was, a balance to his credit of $347 30.

An examination of Gibert's subsequent account, rendered February 7, 1885—and which shows a *debit balance* against Mix of $5066 80—and there appears the debit balance from last account brought forward $8103 12, and he is also *charged*, on February 7, with his note of $2500 and interest.

It is perfectly manifest that both of these debits are erroneous. The

former has been explained, and the latter was only held as a collateral security for whatever balance Mix might owe on account.

These two items aggregate $10,605 34. Deducting the balance of debit against Mix, on account of date February 7, 1885, and there would be a *credit* balance in his favor of $5538 50.

To this should be added the credit balance ascertained to be due Mix on November 22, 1884, of $347 30, which would make the credit balance due Mix on the 7th of February, 1885, of $5885 80.

According to this calculation, Mix has not only satisfied his account for 1884, to secure which the notes and mortgage of May 1, 1884, were given; but he has a balance to his credit on that account of $5885 80.

It is obvious that the notes and mortgage held as collateral security therefor, on the theory presented, possess no value whatever, and the inscription should be canceled and erased.

III.

It became necessary, to a proper elucidation of the question argued in reference to the imputation of payments, to *transpose*, and *first* present the *status* of Gibert's account against Mix.

There is nothing in the act of mortgage authorizing Gibert to enter in Mix's 1884 account the amount of his two notes, he had given " in full settlement" of his 1883 account, in the manner he did. The clause we quoted above is to the effect that if Gibert made any advances "beyond" those stipulated therein, they were to be first paid; and that the proceeds of crops should be imputed to the *open account*, in *excess* of that specified therein, in *preference to that specifically secured thereby*. Inasmuch as there was no open account in *excess* of that secured, the clause in reference to the imputation of payment is without signifiance.

Mix, as a witness, says: " I never authorized Gibert, or consented in any way to his imputing the proceeds of cotton, etc., shipped to him to the payment of the debt on the notes."

In the absence of any consent on the part of Mix to thus apply the proceeds of cotton shipped to Gibert, the *other provisions* of the act should be enforced. They are a law between the parties. The act recites: " For the same purpose, and for the entire amount, the crops made and grown on said plantation, this current year, is hereby pledged and pawned." The crops became thereby consecrated to the payment of the 1884 account, by contract as well as by law, and their proceeds could not take any other destination without Mix's consent. The terms of the written act must control the inference to be drawn from the implied " admission by account rendered."

In our opinion the mortgage indebtedness, or that the mortgage was intended to secure, has been fully paid, and Mix has a balance to his credit of the notes he executed in settlement of his 1883 account.

The judgment appealed from should be reversed.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be avoided, annulled and reversed; and proceeding to render such judgment as should have been rendered in the court below :

It is ordered, adjudged and decreed that the mortgage in favor of P. G. Gibert, of date May 1, 1884, be cancelled and erased, and the notes and accounts intended to be secured thereby are satisfied and fully paid.

Judgment reversed.

### On Application for Rehearing.

Counsel for Gibert insist that our decree is *ultra petitionem.*

He says: "The demand relates to extinguishment of *the mortgage* by a process of imputation of payments different from that made by Gibert, leaving him, as a consequence, an *ordinary* creditor for the full amount claimed by him, and for which he is placed by Mix himself on his schedule as a mortgage creditor."

The language of the petition is "that said mortgage, if it ever existed, has been *extinguished by payment before the institution of these proceedings in insolvency.*"

We simply decided that the inscription of Gibert's mortgage must be canceled and erased, because the debt it secured had been paid. The opinion did not treat or dispose of any other debt. They remain open to future controversy.

Rehearing refused.