The opinion of the court was delivered by
Watkins, J.
This is a proceeding by way of mandamus, against the *14 New Orleans and Northeastern Railroad Company for the purpose of coercing its compliance with one of its obligations to and in favor of the City of New Orleans, and which is contained in Section 2 of Ordinance No. 7483, Administration Series, adopted by the City Council on the 9th of December, 1881, it being an ordinance granting said railroad company the right to construct, operate and maintain, by steam, a railroad for the transportation of freig’ht and passengers, from a designated point on the shore of Lake Pontchartrain to a point designated on the shore of the Mississippi river, within the limits of the City of New Orleans; and also granting it the right to occupy a portion of the river front, on certain conditions stipulated therein.
The interpretation placed upon the contract rights and obligations of the parties respectively, as flowing from said ordinance, on the part of the City Attorney is, that the city granted the railroad company the right to occupy, for its purposes and uses, that portion of the levee, battux’e and wharf, beginning at Port street, and extending down the river to Montegut street, a distance of one thousand feet, and the right to erect and maintain thereon, at its own expense, such ferry facilities, wharves, piles, machinery and other structures as shall be necessary and convenient for the transaction of the business of the company; but that in consideration therefor, the railroad company obliged itself to keep said wharves in repair; to replace the wharves which had been constructed by the city and occupied by it, at such a point as might be designated; to pave Levee street, from Louisa to Poland street with square blocks of granite — the laying of this pavement to be commenced immediately after it obtains possession of said one thousand feet of levee front and batture, and to be completed within one year thereafter.
That the ordinance provided that the grant concerning the wharves and levees is not to go into effect until the consent of the wharf lessees is first obtained.
The petition alleges that the one thousand feet of levee front and wharves was released to the railroad company by the wharf lessees on the 18th of May, 1887, and that it obtained possession and control of same at that time, but has made no attempt to comply with the stipulations of its contract, notwithstanding the delay within which the work of paving was to be completed expired several months prior to the institution of this suit.
*15 Before the delays for answering had expired, the defendant filed a petition for removal of the suit to the United States Circuit Court, and same having been refused, it filed an exception of lis pendens. On the following day the respondent filed an answer or return — first, fully reserving aU of its rights under its motion to remove and plea of lis pendens — in which Act 133 of 1888 is assailed as unconstitutional and void in that, if enforced, it would impair the obligations of respondent’s charter contract, and contravene the provisions of the constitution of the United States; and, in the alternative, a general denial is plead.
The judge a quo overruled the plea of lis pendens, maintained the constitutionality of the law, and, on the evidence, decided that “as tiie respondent did not * * acquire or accept possession under Ordinance 7483 A. S., and as the possession which it enjoys is not the character of possession contemplated by that ordinance, the obligation to pave cau not be enforced. ’ ’
He discharged the rule nisi, refused a peremptory mandamus, and the relator has appealed.
I.
Of the motion to remove:
Both the parties to the suit being citizens of Louisiana, it can not be removed unless there is some federal question involved. Respondent’s counsel’s contention, in this regard, is twofold, viz:
I’Hrst. That Oity Ordinance 7483, A. S., imposes on the railroad company certain onerous “conditions for the privilege of doing that which it had a right to do” under its charter, without the sanction of the city, and to that extent its contract would be impaired if said ordinance be enforced.
Second. That Act 133 of 1888 under which this mandamus proceeding- was instituted, impairs the obligation of said company’s contract with the city as found in said-Ordinance 7483, A. S., and with the State and city, as found in its legislative charter, Act 106 of 1871, by altering and changing the remedies existing at the inception of said contract, for the enforcement of the obligation thereof.
Respondent’s contention in respect to the latter being, that, at the time said contract was entered into, its obligations thereunder could only be enforced by suit for compensatory damages for non-performance thereof, and this statute authorizes the enforcement of specific performance by mandamus, and that the addition of this *16 remedy impairs the contract obligations of its charter and city ordinance.
Counsel for the city replies that, if the defendant’s charter is a-protected contract in the sense of the United States Constitution, and the ordinance is such a law as may impair its obligation, yet the facts-do not sustain defendant’s contention: (1) Because its charter only authorized the company to enter the city by way of Lake Pontehartrain, and extend its tracks to a point below Canal street, not nearer' to the Mississippi river than Claiborne street; (2) because the city ordinance, for the first time, conferred on the defendent any riparian right, or right to occupy any portion of the levee or batture on the river front.
An attentive examination and careful comparison of the charter and ordinance have perfectly satisfied us of the correctness of this assertion. The charter confers no riparian right whatever*, and in this respect the Ordiiiance 7488, A. S.,is its sole dependence. Such being the case, Act 133 of 1888 does not impair in any way the defendant’s charter obligations, and Ordinance 7483, A. S., does not impose any conditions upon the exercise of a previously granted charter right.
The motion to transfer was therefore properly refused by the judge a quo. But it appears from an exemplification from the records of the United States Oircuit Court, that, subsequently to this refusal, the respondent caused a certified copy of the record of the court a qua to be filed therein, but on the hearing of a motion of relator to that effect, the cause was remanded and it has remained in statu quo.
II.
The ground of the respondent’s plea of lis pendens is the pendency of another suit for the same object, before the United StatesOircuit Court, entitled “City of New Orleans vs. New Orleans and Northeastern Railroad Company, No. 11,375.”
Our law declares that 1 ‘the same suit can not be brought before two separate courts, though they be possessed of concurrent jurisdiction, except by discontinuing the suit first brought before the answer is filed.” O. P. 94.
It appears that the suit above referred to was first filed in the Civil' District Court and was numbered therein 16,444, and was subsequently transferred to the United States Oircuit Court, and was- *17 therein transformed into an equity proceeding and given the present number 11,375.
That suit had for object to coerce the railroad company to comply with its contract made in pursuance of Ordinance 7483, A. S., and particularly with the provisions of Section 2, which confers on the company the right to occupy and use portions of the levee and batture between Port' and Montegut streets, and obliges it to erect thereon certain wharves, piles, etc., to replace certain wharves constructed by said city, and to pave Levee street with square granite blocks. The averment is made therein that “the company has failed to commence or prosecute the construction” of said works, and its prayer, inte?' alia, is that it shall “be ordered to pave, at its own expense, with square blocks, Levee street from Louisa to Poland street; ’ ’ but there is no allegation in the petition to the effect that the wharf lessees had ever released to and in favor of the railroad company the levee front and existing wharves, at the place indicated and set apart, and which release was stipulated in Ordinance 7483, A. S., to be a condition precedent to its taking possession thereof, and without which release the company was not in default, and the city without a right of action, pro tanto. Jr.wiu
The failure of the plaintiff in that suit to set out specifically such a release, was made a matter df special defense in that cause after it had been transformed into an equity proceeding in the United States Circuit Court.
That suit was filed in January, 1886, and it was removed in May following.
The release of the wharf lessees was not granted until the 18th of May, 1887, subsequent to the filing of defendant’s cross-bill and answer in the equity case. It is clear that that suit was premature and afflicted with an incurable defect which would have defeated its object in that respect and resulted in a judgment for the defendant.
In addition, we have the defendant’s own admission that Act 133 of 1888 confers the right on the city to enforce specific performance by mandamus, and that such right was not theretofore conferred by ordinance.
These are most material differences, in respect to the legal means of enforcing the city’s rights, and there is in the confection of the pleadings a corresponding difference.
But it appears from an exhibit that is annexed to the record that *18 the United States Oircu.it Court has remanded the suit to the Civil District Court for want of jurisdiction of that court, and that the interference has ceased to exist. It also appears, by another exhibit, that said suit was dismissed as of non-suit, after it was so remanded. This, the City Attorney had the undoubted right to do, under the circumstances of that case.
In Schmidt vs. Brannon, 10 An. 26, our predecessors decided this identical question, and held:
“Litis pend&rn is not necessarily a peremptory exception ; it is cured by the termination of the suit mentioned in the plea. Such was the case in the present instance. The litigation pleaded in the exception being at an end when the exception was argued, the exception fell to the ground as a matter of course.”
In Adams vs. Lewis, 7 N. S., 401, this question was agitated and decided at an early date in our jurisprudence, and the court said:
“First, it is said that the suit being pending in another court, he no longer had any control over it and could not dismiss it. But, though he could not dismiss the suit, he might renounce all advantages under it. The place where he made the inconsistent demands can not affect his right of deciding between them. It is sufficient if he does so before the court where one of the eases is pending, to enable that court to proceed with the claim to which he gave preference. All that it should require is that the election be made in such a manner as would prevent the plaintiff taking advantage of the contrary demand.”
These decisions are, to our minds, conclusive of the present controversy on that subject. We have taken the pains to discuss it as res nova, because it was not fully considered in Mix vs. His Creditors, 39 An. 626, as it was not distinctly an issue therein, on account of defendant’s answer.
In that opinion we merely cited Stanton vs. Embrey, 93 U. S. 553, and Gordon vs. Gilfoil, 99 U. S. 169, in support of the dicta that on the question of litis pendentia the federal jurisprudence was in consonance with our own. But, that the purport of these opinions may not be misunderstood, we quote from them. In the former the court says:
“Suppose it went otherwise, still it is insisted by the defendant in error that the pendency of a prior suit in another jurisdiction is not a bar to a subsequent suit in a Circuit Court or in the court below, *19 even though the two suits are for the same cause of action; and the court below concurs in that proposition.”
In the latter, at page 178, the court says: “But it has frequently been'held that the pendency of a suit in a State court is no ground for a plea in abatement to a suit upon the same matter in a federal court.”
This being a recognized rule of federal jurisprudence, it should be adhered to in our own courts as matter of judicial reciprocity.
The plea was correctly overruled.
III.
On the merits the first question that occurs for examination and decision is whether or not the respondent acquired possession of the batture, levee and wharves on the river front under and in pursuance of Ordinance 7483, A. S.; and the second is whether the character of its possession is such as was contemplated by that ordinance — for it is upon the solution of these two propositions that the issue depends.
The respondent’s counsel formulates in his brief this statement, viz:
“But underlying all of these minor objections is the well ascertained fact that the defendant has not taken possession of the 1,000 feet of river front under Ordinance 7483, which sought to impose the obligation of paving; but it took possession under the obligations of Ordinance 2245, which did not impose paving, and with the distinct agreement embodied in that ordinance and its attendant contract that the question of liability should be held in abeyance, and should not be in any manner affected by the qualified possession under this Ordinance 2245,” page 17.
Or, in other words, “that the possession of the 1,000 feet of river front and batture, described in Section 2 of Ordinance 7483, A. S., was to be tvndisputed, in order that the obligation to pave should become effective and executory on the part of the defendant.”
The proof is, that respondent’s occupancy commenced in August and September of 1887, and on the 18th of May; 1887, the wharf lessees executed a release, in which it was stated, viz:
“That, whereas, Ordinance No. 7483, A. S., provides that no grants therein be made of wharves or wharfage facilities, etc., it shall go into effect without the consent of the wharf lessees; now, therefore, in pursuance thereof, they * * do hereby consent that the wharf' *20 privileges and grants made in said Ordinance No. 7483, A. S., shall at once go into effect.”
That is clear, concise, absolute and unmistakable in terms. This • release is made under and in conformity with the conditions stipulated in Ordinance 7483, A. S., and was intended to and 'did put its provisions into operation.
Not until that release was executed, and immediately after it was executed, the respondent took formal possession of said batture, levee, wharves, and other terminal facilities and franchises on the Mississippi river front.
The second section of Ordinance No. 7483, A. S., provides that the respondent “shall have the right, and the same is hereby conferred, to occupy for its purposes and uses that portion of the levee, batture and wharf * * beginning at Port street and (extending) 'a distance of 1,000 feet down the river to Montegut street, and to erect ■and maintain t thereon, at its own [expense, such ferry facilities, wharves, piles, machinery, elevators, yards, tracks, depots, stations, sheds and other structures (as) shall be necessary and convenient for the transaction of its business, etc., * * provided, * * that the .said company shall replace the wharves constructed by the city and occupied by said company at such point as may be designated by the Administrators of Commerce and Improvements and City Surveyor, and shall pave Levee street with square granite blocks from the extremity of the paving on that street, or from Louisa street to Poland street; and the City of New Orleans shall be entitled ‘to remove all the cobble stones now on said street, * * and the square block pavement on ■Jjevee street shall be commenced immediately after the said company obtains possession of the one thousand feet of river bank and levee conceded and alloived to them by this ordinance, and continue and finish the same within one year. ’ ’
That section concludes with the final proviso ‘ ‘ that no privilege or grant concerning or referring to the wharves and levees herein granted shall go into effect until the consent and permission of the wharf lessees be had and obtained, etc.”
The provisions of that section of the ordinance seem to be quite as clear and equally as free from ambiguity as the written release of the wharf lessees is.
The query then is, in what respect does Ordinance No. 2245, Council Series, alter, amend, modify or change the terms and conditions of *21 the grants and privileges contained in Section 2 of Ordinance 7483,. A. S., just quoted ante.
In order that we may be concise, and commit no error, or make no mistake, we quote'it in its entirety, the former, viz.:
Mayoralty op New Orleans, \ City Hall, April 30, 1887. /
No. 2245 — Council Series.
“Whereas, There is now existing a litigation between the City of' New’Orleans and the New Orleans and Northeastern Railroad Company, as appears by the suit of the City of New Orleans against the New Orleans and Northeastern Railroad Company, No. 11,375 on the docket of the Circuit Court of the United States for the Fifth Circuit and Eastern District of Louisiana, which is not likely to be terminated in a short time; and
“Whereas, There are now no sufficient wharves in front of the depot property of said railroad company and below Port street in the third district of New Orleans, and it is desirable that wharves should be constructed there; and,
“Whereas, The said New Orleans and Northeastern Railroad Company are willing to construct wharves on the river front below Port street, and advance the necessary outlay of money for that purpose on certain conditions, notwithstanding the pending of the said suit, which is'not to be affected thereby; and
“ Whereas, The consent of the wharf lessees, as required in paragraphs of Section 2 of Ordinance No. 7483, A. S., has been obtained:
“ Section 1. Be it ordained by the City Council of New Orleans, That the Mayor be and he is hereby authorized and directed to enter into a-contract by notarial act with the New Orleans and Northeastern Railroad Company for the construction and maintenance of wharves on the river front, from the prolongation of the lower; property line of Port street to the prolongation of the upper property line of Monte-gut street, in the manner and under and within the terms and conditions contained in the said Ordinance No. 7483, A. S., relative to the occupation and use of said river front provided by said Ordinance No. 7483, under the following conditions, to-wit:
“1. The said New Orleans and Northeastern Railroad Company shall rebuild, without unnecessary delay, not to exceed four months, at any other place within the third district of this city as may be des *22 ignated by the City Council of New Orleans, new wharves equal in extent, square for square, as per measurement of the City Surveyor, to replace the wharves which are or may be on the said river front at the time the said New Orleans and Northeastern Railroad Company takes possession of the same.
“2. That should the right to the use of said space of river front and the said wharves thereon be adjudicated and decreed as not conferred on the said railroad company, then and in that case the next wharf lessees shall, out of the funds for the new wharves provided in their contract with . the city, repay said railroad company the entire amount and value of all wharves constructed by them.
“Sec. 2. Be it further ordained, That should the right to said space of river front and said wharves to be constructed between Port and Montegut streets be adjudicated and decreed as not legally conferred on said railroad company, then and in that case the whole amount of money outlaid by said railroad company shall be refunded and paid to said railroad company out of the first money to be appropriated to new work in the construction of wharves in New Orleans, under a renewal of the present lease or any other lease that may here - after be made of the wharves, and the City of New Orleans subrogates the said railroad company to its rights against any wharf lessee to have such appropriation of the funds for new work, and in default thereof the City of New Orleans shall pay said moneys to the said railroad company.
“Sec. 3. Be it further ordained, That it shall be especially stipulated in said contract that nothing in this ordinance shall in any way relieve the said railroad compaiw of any of the obligations imposed by the provisions of said Ordinance No. 7483, A. S., or in any way impair or prejudice the rights of the City of New Orleans now in contestation in the suit of the City of New Orleans vs. said railroad company, No. 11,375 on the docket of the Circuit Court of the United States for the fifth circuit and eastern district of Louisiana, nor shall the rights of the said railroad company as set forth in the said suit No. 11,875 be prejudiced in consequence of this ordinance and the notarial agreement which shall be according as the said ease may be determined, and as the rights of said railroad company may be adjudicated and decreed therein on final decree in the Appellate Court, which said suit shall proceed to a final termination thereof for the purpose of fixing the rights of the parties thereto; nor shall this agreement be offered in evidence or referred to in said suit.
*23 “Adopted by'the Council of the City of New Orleans, April 26, 1887.”
The ground that this ordinance was intended to and did cover may be summarized thus, viz.:
1. Whereas suit No. 11,375 supra “is not likely to be terminated in a short time.”
2. That there are no sufficient wharves in front of the depot property of the respondent.
3. That the defendant is willing to construct wharves on the river front below Port street, and advance the necessary outlay of money for that purpose, notwithstanding the pendency of said suit.
■1. That the consent of the wharf lessees has been obtained in accordance with section 2 of Ordinance No. 7483, A. S.
5. That the Mayor is authorized to enter into a notarial contract with the respondent “for the construction and maintenance of wharves, etc., in the manner and under and within the terms and conditions contained in said Ordinance No. 7483, A. S., relative to the occupation of said riverfront, under the following conditions, viz: ”
6. The respondent shall build certain new wharves to replace those taken possession of by the company.
7. “That should the right to the use of said space of river front, and said wharves thereon be decreed and adjudicated as not legally conferred on said railroad company, then, and in that case, the next wharf lessees shall 'f * repay the said railroad company the entire amount and value of the wharves, etc.”
8. “That should the right to said space of river front and said wharves * * be adjudicated and decreed as not legally conferred upon said railroad company, then and in that case the whole amount of money outlaid by said railroad company shall be refunded,” etc.
The foregoing are all the points covered by the Ordinance 2245, A. S., and they do not cover the question of paving Levee street; that seems to have been left uninterrupted entirety. Simplified, the tenor and substance of it is, that the respondent was willing to do the work and accept the grants and concessions that were stipulated in its favor, provided that should either its use of or its right to the quota of batture, etc., be adjudicated in that suit as not legally conferred, it should be fully compensated and reimbursed the amount of its outlay.
The final clause — Section (3) three of the Ordinance No. 2245, O. S. —is a saving clause and provides— •
*24 1. That the contract between the Mayor and the respondent shall specify “that nothing in this ordinance, shall in any way relieve the said railroad company of any of the obligations imposed by the provisions of said Ordinance No- 7483, A. S.;” and that it shall not interfere with the rights of either party in the pending suit; “which shall be according as the case may be determined, and as the rights of said railroad company may be adjudicated and decreed thereon on final decree in the appellate court, which said suit shall proceed to a final termination thereof for the purpose of fixing the rights of the parties thereto; nor shall this agreement be offered in evidence or referred to in that suit."
This was intended to operate as a mutual shield and safeguard against danger flowing out of that suit to either party thereto; while the contract stipulations enabled the respondent to do the work with the assurance of it being fully reimbursed its money outlay, and the city to have her wharves and streets put in repair according to contract.
As we have seen, there was in that suit an incurable vice, and it has been discontinued and terminated and this suit is in its stead. We do not regard the stipulation that “said suit shall proceed to a final termination’ ’ as in the nature of a covenant that it should not be abated or dismissed, but merely that the ordinance should not have the effect of discontinuing or abating it. This clause stands apart from the contracting clauses quoted from the ordinances.
In pursuance of Ordinance No. 2245, O. S., the relator and respondent entered into a notarial contract on the 25th of May, 1887 — only a few days subsequent to the execution of the release of the wharf lessees — wherein it was stipulated on the part of the city that she granted to respondent “the right to construct and maintain wharves on the river front,” from Port to Montegut street, “in the manner and under and within the terms and conditions contained in Ordinance No. 7483, A. S.;” and wherein it was likewise stipulated on the part of the respondent that it would “cause to be constructed and maintained wharves on the river front” from Port to Montegut street' “in conformity to the provisions and requirements_of Ordinance No. 7483, A. S.”
Both ordinances are incorporated in full in the contract, and then follow stipulations precisely in conformity thereto, as outlined above..
After making a most careful examination and comparison of said *25 ordinances and contracts, we feel satisfied'that there is nothing precarious or uncertain in the respondent’s possession of the terminal facilities granted it by the city; that the company acted in view of all the stipulations in those two ordinances in its favor, and of the obligations and conditions they imposed upon it. It was willing to take possession and to erect wharves, etc., on the sole condition that it should be remunerated in case of eviction by a decree in that suit.
The proposition of the railroad company condensed is, that the possession of the one thousand feet of levee is disputed and precarious, because Ordinance 7483, A. S. is assailed as illegal in Circuit Court suit 11,375, and that the effect of that'suit was suspended by Ordinance 2245, O. S., under which_it went into possession.
That suit was brought by the city to coerce the railroad company’s full compliance with all of its obligations under the former ordinance, and inter alia the obligation to pave Levee street. In that suit the defendant’s answer was, that the city was seeking, by that ordinance, illegally to enforce certain conditions upon the use of her streets, and its prayer was, that the stipulation in said' ordinance in relation to paving Levee street be annulled, on the ground that it is entitled, under its charter, to all of the rights that are purported to be conferred by said ordinance, and that the petition be dismissed with costs.
In the first place, we have found and decided that the riparian rights and franchises purporting to have been conferred by that ordinance, were not, as a matter of fact, conferred by the charter of the railroad company, and, therefore, the supposed illegality of said ordinance did not, as a matter of law, exist. Thereby, we have disposed finally of the question of the alleged illegality of said ordinance, which was set up in the former suit, as a reconventional demand, though it. was not as a matter of fact, such a demand. Meyers & Co. vs. Burke, unreported.
In the second place, we have found and decided that, as in that suit, there was no averment that the wharf lessees had made the required release of the wharves in question, that suit disclosed no right in the city to compel the defendant to pave Levee street, and that this lack of essential averment was an incurable defect therein, in-this particular, and, upon trial thereof, judgment would have, necessarily, gone against the city on that issue, as of non-suit. Hence,, the right of the company to. pccupy Levee street and its obligation to do the paving, were not issues in that ease, and. could not have-been decided therein.
*26 We have also found and decided that the question of paving Levee street is not mentioned in Ordinance 2245, O. S., under which the defendant claims to have acted in entering into possession of its batture rights and franchises, and hence its possession of the one thousand feet of levee was in pursuance of Ordinance 7483, A. S., and was not only unquestioned, but expressly affirmed by the city.
But that suit was voluntarily discontinued by the city, and the company’s charge of illegality against said ordinance passed out of ■court with it.
This suit has for its sole object to coerce the defendant to pave Levee street, and it is met with a general denial as an answer. There can be no serious question as to the right of the city to insist on the respondent’s performance of this part of its contract according to the provisions of Ordinance 7483, A. S., and the City Surveyor’s specifitions.
It is therefore ordered that the judgment appealed' rom be reversed, and it is now ordered and decreed that tn ' visional mandamus be made peremptory, and that the respondent be taxed with .all costs, in both courts.