L. BUCKI & SON LUMBER CO. v. ATLANTIC LUMBER CO.

(Circuit Court of Appeals, Fifth Circuit. May 28, 1901.)

1. CONTRACTS—CONSTRUCTION—ENTIRE CONTRACT.

A contract was made for the sale of a large quantity of logs to be delivered in monthly installments during a period of eight years, payments to be made also in installments at times having relation to the deliveries. It contained stipulations as to such payments, and guaranties as to the average size of the logs to be delivered in each installment. *Held*, that it was an entire contract, and not a number of separate and independent agreements for the sale of the quantity to be delivered and paid for each month, although there might be breaches of the minor stipulations and warranties with reference thereto which would warrant suits without a termination of the contract.

2. JUDGMENTS—MATTERS CONCLUDED—ACTION FOR BREACH OF INDIVISIBLE CONTRACT.

The seller declared the contract terminated for alleged breaches by the purchaser, and brought suit for general and special damages, the latter covering payments due for installments of logs delivered. By way of set-off and recoupment against this demand, the purchaser pleaded breaches of the warranty as to the size of the logs delivered during the months for which payment had not been made. *Held*, that the judgment in such action was conclusive as to all claims or demands of either party against the other growing out of the entire contract, and was a bar to a subsequent suit brought by the purchaser to recover for other breaches of the same warranty in relation to deliveries made in previous months.

In Error to the Circuit Court of the United States for the Southern District of Florida.

The case may be shortly stated as follows: On the 28th of June, 1892, the Ambler Lumber Company, party of the first part, and Charles Lord Bucki, party of the second part, entered into a contract, in which the stipulations material to the present case are as follows: "The said parties, each in consideration of the things herein agreed to be done and observed by the other, agree as follows: (1) The party of the first part to deliver to said party of the second part, and he to receive from it, at his log pens in Jacksonville, Florida, for the period of eight years, counting from the starting up of the mill hereinafter mentioned, good merchantable pine logs to the amount of one million five hundred thousand feet, board measure, according to Preston's rules of measurement, each month: provided, that at any time within four months from the starting up of the mill, the quantity to be delivered per month may be increased, at the option of the party of the second part, on thirty days' notice, so as, however, not to exceed two million feet in any one month, and the amount so fixed shall be monthly delivered during the term of this contract: and provided, further, that all logs that may have been delivered and accepted previous to the starting up of the mill shall be treated as a proper delivery under this contract. Said logs shall average, according to Preston's scale, three and one-half logs to the one thousand feet, which party of the first part guaranties, and no deduction shall be made for sap; and the party of the first part guaranties that the sap on logs delivered during the term of this contract shall not exceed an average of four inches of the diameter of the log at the small end; and if, at the

end of six months, such sap shall have exceeded an average of four inches of such diameter, there shall be refunded the value of such average excess, anything herein to the contrary notwithstanding. At the determination of the contract all the averages of sap to be adjusted to cover the entire period, and, if the average of the logs delivered during the entire period shall be within the limit of the four inches of sap, then any amount allowed for such excess shall be paid to said party of the first part. All logs to be of good average lengths, say from seventeen to forty feet. All logs are to be scaled at the small end inside the bark, according to Preston's rules: provided, that all logs which shall be over forty feet in length, by special order of the party of the second part, shall be scaled by middle measurement under Preston's rules: and provided, further, that the party of the first part may, if it desires, deliver logs over forty feet in length without specific orders, but in such case the logs shall be measured at the small end. (2) When the logs shall be ready for delivery at the log pens of the party of the second part, the parties shall jointly select a surveyor, whose wages shall be paid one-half by each party, who shall survey and scale according to Preston's rules, as the same shall be delivered at the said log pens, and report thereon in writing to each of the parties, and whose report shall be conclusive as to quality and quantity: provided, that, if either party shall, in writing, object to the surveyor so jointly selected at any time thereafter, or in case of his death or inability to serve, a successor or substitute shall be at once mutually chosen. (3) The said party of the second part shall have the privilege of ordering from said party of the first part, at pleasure, logs of specific length of thirty feet and less, which said parties agree to furnish: provided, that whenever, in the filing of such specific orders, logs shall be supplied that scale less than at the rate of one thousand feet to every three and a half logs, such logs shall not be so counted as to affect the said average of three and one-half logs to the thousand feet. (4) Until delivery by said party of the first part at said log pens, the expenses and risk shall be exclusively that of said party of the first part, but the party of the second part agrees to furnish at his expense two men to assist in unloading the trains during the usual working hours at the mill without intermission for any reason, and to provide a log pen of sufficient capacity to hold two million feet of logs, board measure. (5) During the five years next succeeding this contract the party of the second part is to pay to said party of the first part at the rate of seven $25/100$ dollars per thousand feet of logs, board measure, for the logs delivered to him, measurement to be made as hereinbefore provided, and thereafter and during the remainder of the term of this contract,—that is to say, during the three years next ensuing,—at the rate of seven $75/100$ dollars per thousand. Payments shall be made by said party of the second part; and he hereby agrees to pay on the first and fifteenth of each month for previous deliveries,—that is to say, on the fifteenth of the month for the deliveries between that date and the last day of the proceeding [preceding] month, and the first of the month for those between that date and the fourteenth of the proceeding month,—in drafts payable in bank in the city of New York sixty days after the date thereof; but after one year from this date party of the first part may demand cash, allowing a discount at the rate of eight per cent. per annum, and the party of the second part shall, on such demand, pay the cash." This contract appears to have been immediately transferred by the party of the first part to the Atlantic Lumber Company, and by the party of the second part to L. Bucki & Son Lumber Company. Operations were carried on under the contract until the 1st of October, 1897, when the Atlantic Lumber Company instituted two suits against the L. Bucki Lumber Company, in one of which a general breach in the contract on the part of the L. Bucki & Son Lumber Company was averred, and general damages claimed. The other suit was to recover amount due for the contract price of logs delivered by the Atlantic Lumber Company to the L. Bucki & Son Lumber Company prior to October 1, 1897. The two suits were consolidated, an amended declaration filed, and judgment was asked for general and specific damages. The L. Bucki & Son Lumber Company answered, denied breach of the contract, averred breaches on the part of the Atlantic Lumber Company, particularly in that the said lumber com-

pany did not either in the months of June, July, August, or September, 1897, deliver to the L. Bucki & Son Lumber Company logs averaging 3½ logs to the 1,000 feet, as had been covenanted in the contract. In the trial of the suit the material question was the interpretation of the contract with regard to the average of logs to be delivered thereunder. The plaintiff claimed that the average guarantied was for the entire period of the contract. The defendant claimed that the true interpretation was that the average logs to be delivered were to be not less than 3½ per 1,000 feet, board measure, for each and every month of the contract. In this contention the defendant, the L. Bucki & Son Lumber Company, prevailed. The result of the suit was that the Atlantic Lumber Company was denied general damages for breach of the contract, but allowed to recover the market value of the logs delivered during the months of June, July, August, and September, 1897. At the conclusion of the foregoing suit the L. Bucki & Son Lumber Company instituted this present action, in which it avers as follows: "And plaintiff avers that afterwards, to wit, in the month of August, 1894, and subsequently, the defendant broke and violated said contract, and the covenants and agreements on its part therein contained, and plaintiff assigns as breaches of said contract and of the covenants and warranties therein contained on the part of defendant that the defendant did not, either in the month of August, 1894, or in the month of September, 1894, or in the month of March, 1895, or in the month of August, 1895, or in the month of February, 1896, or in the month of March, 1896, or in October, 1896, or in November, 1896, or in December, 1896, or in April, 1897, deliver to the plaintiff, at its boom pens, in accordance with the covenants and agreements of the said contract, two million feet of good, merchantable pine logs, averaging three and one-half logs to the thousand feet, board measure, according to Preston's rules, in either one of the said months, as it was then and there the duty of the said defendant to do; but that, on the contrary, the logs which were delivered in each of the said months averaged more than three and one-half logs to the thousand feet, board measure, according to Preston's rules, mentioned in the said contract, to wit, about four logs per thousand feet, whereby plaintiff alleges that the covenants of warranty in respect to the size of the said logs contained in said contract were broken by the defendant, to the great damage and injury of the plaintiff; and plaintiff alleges that the difference in value to the plaintiff of the logs delivered by the defendant to it during the months aforesaid and the value of the logs delivered during the months aforesaid if they had been according to the contract, to wit, logs averaging three and one-half to the thousand feet, board measure, according to said Preston's rules, is the sum of, to wit, twenty-five thousand dollars. Wherefore plaintiff claims damages of the defendant in the sum of twenty-five thousand dollars, with interest thereon from the dates of payments for the said logs by plaintiff." To this demand the Atlantic Lumber Company pleaded, among other things, the former suit, the demands therein, and the judgment rendered. The L. Bucki & Son Lumber Company demurred to this plea, and the demurrer was overruled. The L. Bucki & Son Lumber Company then filed a reply, setting forth the facts in the former suit, and to this reply the court sustained a demurrer. On leave, the L. Bucki & Son Lumber Company filed an amended reply more fully setting forth the facts in the former suit, and further averring: "That in the former action by defendant against the plaintiff, in the said second plea stated, the said pleas of set-off and recoupment, in said second plea of defendant in this action stated, expressly embraced matters of set-off and recoupment of damages for the breaches of defendant's covenants in the contract sued on to deliver two million feet of good, merchantable pine logs averaging three and one-half logs per thousand feet, board measure, according to Preston's rules, for each of the four months of June, July, August, and September, A. D. 1897; and that the said pleas of set-off and recoupment did not include and embrace any damages for a breach of the said covenant for any of the months prior to May, A. D. 1897, to recover which this action is prosecuted; and that in the said former action no evidence whatever was offered tending to prove damages for the breach of the said covenants for any months prior to June, A. D. 1897, and the jury did not allow defendant in said

former action any damages for any breach of said covenants for any months prior to June, A. D. 1897. Plaintiff further alleges that at the time the said pleas of set-off and recoupment were filed in the said former action, and up to the time the verdict and judgment were rendered therein, the now plaintiff, and defendant in said action, did not possess and have actual knowledge of the breaches of the said covenants mentioned and specified in the plaintiff's declaration in this action. And this plaintiff further avers that at the time of the filing of the said pleas of set-off and recoupment in the said former action, and up to the time of the entry of the verdict and judgment therein, it, this plaintiff, did not have and possess any knowledge of any of the facts set forth in the plaintiff's declaration in this action showing the breaches of the said covenant prior to June, A. D. 1897, sued on in this action." A demurrer to this amended replication was sustained by the court, and thereupon, the plaintiff declining to further plead, judgment was entered for the Atlantic Lumber Company, and the L. Bucki & Son Lumber Company sued out this writ of error.

H. Bisbee, for plaintiff in error.
R. H. Liggett, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The case shows that on October 1, 1897, when the Atlantic Lumber Company declared the contract ended by the defaults of the L. Bucki & Son Lumber Company, and sued for general damages for the breach thereof, and to recover the several amounts due for logs delivered prior to that date, the L. Bucki & Son Lumber Company had counterclaims against the Atlantic Lumber Company for breach of the guaranty that the logs delivered should average not more than $3\frac{1}{2}$ logs to the 1,000 feet, board measure, during each month of the contract. These counterclaims existed for some certain months, 11 in number, in which full payment had been made for the logs delivered, and for some certain 4 months for which payment had not been made, but was demanded in the suit. In answering the suit, the L. Bucki & Son Lumber Company claimed in recoupment and set-off, against the demand for the contract price of the logs delivered, but not paid for, the damages resulting from the breach of the guaranty as to the average of the logs for the certain months sued for, but made no claim for damages for the breach of the guaranty for the other months in which there had been failure to maintain the average. In the present suit, brought to recover for the failure of the guaranty as to the average of logs for the 11 months, the question is whether the judgment in the former suit is conclusive. The contract was one covering the sale of a large quantity of logs to be delivered in installments during a long period of time, and in which the payments were to be made in installments at times having relation to the delivery of the logs. The contract contained stipulations and guaranties in regard to which there might be failures and breaches frequently occurring during the life of the contract,—such as the failure to pay in time as agreed, and the failure to maintain the warranty as to the average of the logs delivered monthly,—none of which would necessarily put an end to the contract, even if suit should be instituted for such breach. Notwith-

standing the subsidiary provisions, breaches of which might warrant a suit, the contract appears to be an entirety, and not several independent agreements. Norrington v. Wright, 115 U. S. 189, 211, 6 Sup. Ct. 12, 29 L. Ed. 366. See Clark v. Steel Works, 3 C. C. A. 600, 53 Fed. 494; Cherry Val. Iron Works v. Florence Iron River Co., 12 C. C. A. 306, 64 Fed. 569; Stokes v. Baars, 18 Fla. 656. When the Atlantic Lumber Company declared the contract breached and ended by the defaults of the Bucki & Son Lumber Company, and demanded damages therefor, general and specific, it would seem that the Atlantic Lumber Company was obliged to specify and demand all the damages, general and special, it claimed on account of the breaching and ending of the contract, and would not now be permitted after recovering judgment in such suit to prosecute other suits to recover other general or special damages growing out of the breach of the same contract; and this whether the general or special damage was known at the time of judgment or not. If this be true, —and we have no doubt it is,—it seems clear that the same rule applies to the other party. While the L. Bucki & Son Lumber Company did not commence the litigation, it answered, and in its answer set up and charged a breach and abandonment of the contract by the conduct and defaults of the other party, and claimed damages resulting. But it is now claimed in regard to the warranty as to the average of the logs that the damages claimed by L. Bucki & Son Lumber Company were only in reduction and recoupment of the amounts claimed for logs delivered in four certain months, and that the breaches assigned in regard to the guaranty related only to those months. We do not think that this varies the rule to be applied. When the contract was ended, the claims of each party for alleged breaches and damages therefor constituted an indivisible demand; and when the same, or any part of the same, was pleaded, litigation had, and final judgment rendered, such suit and judgment constitute a bar to subsequent demands which were or might have been litigated. Baird v. U. S., 96 U. S. 430, 24 L. Ed. 703. But it is only necessary to now hold that this is the rule to be applied as to damages for the breach of the specific warranty as to the average of logs delivered under the contract. That demand cannot be split up, and be made the basis of subsequent suits. The learned trial judge reached this conclusion, and gave his views in elaborate opinions found in the record. As the former suit is a bar to the present action, the other assignments of error need not be considered, and we only remark that the conclusion reached in the case does not appear to deprive the plaintiff in error of any just and equitable right. From an inspection of the record, it appears that the breaches of the contract assigned were for months during which the Atlantic Lumber Company delivered, and the L. Bucki & Son Lumber Company apparently received and paid for, logs in accordance with the provisions of the contract, making no question that the logs were not fully up to the requirements of the contract in regard to the average. In fact, in the former suit the Atlantic Lumber Company pleaded and offered to prove that the L. Bucki & Son Lumber Company "had acquiesced in and consented to the construction of the

said contract that the average of three and one-half logs to the thousand feet, board measure, according to Preston's rules, did not mean an average of three and one-half logs to the thousand feet, board measure, according to said rules in each particular month's delivery under the said contract, but that the said contract meant a general average covering the entire period of the said contract"; and this plea and evidence was rejected on demurrer. The second paragraph of the contract provides that: "When the logs shall be ready for delivery at the log pens by the party of the second part, the parties shall jointly select a surveyor, whose wages shall be paid one-half by each party, who shall survey and scale according to Preston's rules as the same shall be delivered to the said log pens, and report thereon in writing to each of the parties, and whose report shall be conclusive as to quality and quantity." It is presumed that this provision of the contract was complied with, and, if it was, then at the time of delivery the L. Bucki & Son Lumber Company was fully informed as to whether or not the logs were in accordance with the requirements of the contract, and if, with such knowledge, the L. Bucki & Son Lumber Company then fully paid the contract price for the said logs without notice and protest, it seems to be pretty clear that now, after a litigation in which the breaches of the contract by each party were in question was terminated by a final judgment, it is no denial of justice to refuse to reopen the inquiry as to how faithfully the average guaranty was complied with. The judgment of the circuit court is affirmed.