## LAND v. FERRO-CONCRETE CONST. CO.
(District Court, W. D. Kentucky. March 20, 1915.)

1. ABATEMENT AND REVIVAL ☞12—PENDENCY OF ANOTHER ACTION—ACTION IN STATE COURT.

The pendency of a suit in a state court does not abate an action in a federal court, though the causes of action are identical.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 87–91, 94, 95, 98; Dec. Dig. ☞12.]

2. REMOVAL OF CAUSES ☞95—SPLITTING CAUSES—WAIVER.

Under Civ. Code Prac. Ky. § 83, providing that several causes of action may be united, if each affect all parties to the action, may be brought in the same county and prosecuted by the same kind of an action, and if all are brought upon contracts express or implied, where plaintiff brought two actions, in one of which he sought to recover the amount earned under a contract prior to October 16th, and in the other the amount which he would have made subsequent to that date had defendant not refused to permit him to perform, defendant had the right at its option to compel a consolidation of such suits; but, having removed one of them to a federal court without seeking to compel a consolidation, he waived his right to insist that there should have been a consolidation, or that plaintiff should have been required to elect which suit he would prosecute, or to object to the splitting into two parts of a single cause of action, assuming that there was only one cause of action, especially where a plea in abatement because of the pendency of the other suit referred only casually to the splitting of the cause of action.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 204, 205; Dec. Dig. ☞95.]

3. ABATEMENT AND REVIVAL ☞12—ACTIONS IN STATE COURT AND FEDERAL COURT.

An action commenced in a state court and removed to a federal court was thereby brought within the rule that the pendency of an action in a state court does not abate an action in a federal court.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 87–91, 94, 95, 98; Dec. Dig. ☞12.]

At Law. Action by W. G. Land against the Ferro-Concrete Construction Company. On demurrer to amended and supplemental answers. Demurrer to an amended answer sustained, and demurrer to an amended and supplemental answer overruled pro forma.

Samuel S. Blitz and C. R. McAlee, both of Louisville, Ky., for plaintiff.

Humphrey, Middleton & Humphrey, of Louisville, Ky., for defendant.

EVANS, District Judge. In order to a full understanding of the question to be decided, it may be well to state somewhat fully the facts upon which it arises. This action was brought in the Jefferson circuit court on November 25, 1909, for the recovery of damages from the defendant for certain alleged breaches of a contract in writing between the parties whereby they had agreed as follows:

"Memorandum of Agreement between the Ferro-Concrete Construction Company, of Cincinnati, and Mr. W. G. Land, of Louisville, Ky.

"For the payments herein stated, Mr. W. G. Land hereby agrees to supervise the work of grading and hauling herein specified, and also to furnish the

necessary teams, scrapers, plows, wagons, and other hauling equipment to do the scraping and hauling required in the construction of section A, southern outfall sewer, Louisville, Kentucky, according to the method of procedure outlined as the work proceeds, by the Ferro-Concrete Construction Company.

"It is agreed by said Mr. Land that he will at all times after June 1, 1908, during the progress of this work, provide an average of ten teams per day during each week until all of the scraper work required exclusive of backfilling, has been completed. After the scraper work exclusive of back-filing has been completed, the number of teams required may be reduced to the number then thought necessary by the Ferro-Concrete Construction Company. It is understood that in requiring not less than a certain number of teams, said teams are to be distributed on the work of scraping and hauling, specified in the items of work following in this agreement, as may be most advantageous to the Ferro-Concrete Construction Company in arranging the construction of the sewer as a whole.

"At the end of each week the Ferro-Concrete Construction Company and Mr. W. G. Land shall jointly measure all excavation and hauling done during that week, and that during the following week the Ferro-Concrete Construction Company shall pay to said W. G. Land the amount of money shown to be due him according to those measurements, at the prices named herein, provided that W. G. Land is continuing to conduct his work in a satisfactory manner, and with the force of teams specified. Should he fail to maintain a sufficient force, or otherwise conduct his work in a manner disadvantageous to the Ferro-Concrete Construction Company, so that the spirit of this agreement is broken by him, he shall forfeit to the Ferro-Concrete Construction Company any unpaid sum of money due him for the previous work; it being understood that such sum shall be considered a proper amount for the Ferro-Concrete Construction Company to appropriate to cover its additional expense, trouble, or annoyance or delay in procuring teams to conduct the work itself, or to procure another party to do this work.

### "Items of Work and Prices for Payment.

"Item 1—Scraper excavation between station 0+70 to station 2+10, a cut having a depth not exceeding 9½ feet, a mean depth not exceeding 7 feet, a width at the bottom of 20 feet, and banks sloping 1 to 1. The material is to be scraped into the depression between station 2+10 and station 2+40 on each side of the cut and 50 to 100 feet therefrom. The price agreed upon for this work is seventeen and one-half cents per cubic yard measured in the cut.

"Item 2—Scraper excavation between stations 2+40 and 14+20, a cut similar to that in item 1, with a maximum depth not exceeding 11 feet, a mean depth of not more than 8 feet, the material to be placed between 50 and 100 feet from the edge of the ditch, and the south side thereof. The price agreed upon for this work is eighteen and one-half cents (18½c.) per cubic yard, measured in the cut.

"Item 3—Scraper excavation between stations 14+20 and 17+80, a cut similar to that in item 1, with a maximum depth not exceeding 11 feet, a mean depth not exceeding 6 feet, a width at the bottom of 18 feet, and sides sloping 1 to 1, the material to be placed where directed within a distance of 150 feet from the place where it is removed. The price agreed upon for this work is twenty cents (20c.) per cubic yard, measured in the cut.

"Item 4—Transporting any of the materials excavated under items 1, 2, and to points farther distant from the ditch than specified under the item itself, by increasing the length of scraper haul. The quantity of material thus transported may vary from 0 to 6,000 cubic yards. The price agreed upon for this is one cent per cubic yard for each 100 feet or fraction thereof of additional haul.

"Item 5—Scraper work replacing the material excavated under items 1, 2, and 3 back into the cut, when this is done within sixty days from the date of its original removal. The price agreed upon for this work is fifteen cents (15c.) for each yard for the first 100 feet of haul, and three-fourths of one cent (¾c.) for each 100 feet additional haul, or fraction thereof. The quantity to be handled under this item may be between 6,000 and 12,000 cubic yards.

"Item 6—Scraper excavation at other stations on the sewer, if any, accepted by Mr. Land without special agreement as to price shall be paid for at the price named in item 1, namely, seventeen and one-half cents per cubic yard.

"Item 7—Gravel, sand, earth, and other materials loaded by the Ferro-Concrete Construction Company from its cable way or other machinery, into the dumping wagons of Mr. Land, and hauled by him to points designated by the Ferro-Concrete Construction Company, and there dumped. The quantity may vary from 3,000 cubic yards to 13,000 cubic yards. The prices to be paid for this haul are twenty cents (20c.) per cubic yard for the first 400 feet or less of haul, and one cent (1c.) per yard for each additional 100 feet or fraction thereof.

"Item 8—Gravel, sand, earth, or other materials loaded by the Ferro-Concrete Construction Company by hand into the dumping wagons furnished by Mr. Land and hauled by him to points designated by the Ferro-Concrete Construction Company and there dumped. The quantity of this may vary from 2,000 to 6,000 cubic yards. The price to be paid for this hauling is twenty-two and one-half cents (22½c.) per cubic yard for the first four hundred feet haul or fraction thereof, and one cent per yard for each additional hundred feet or fraction thereof.

"Note—The total quantity of material to be handled under items 7 and 8 will probably not exceed 14,000 cubic yards, and it may be less than 10,000 cubic yards. Two prices are specified because the machinery will load wagons faster than they can be loaded by hand. Some material, however, will be handled by both methods. Materials handled under item 4, if any, will diminish the quantities handled under items 7 and 8. Teams furnished to haul cement, steel, lumber supplies, and other materials shall be paid for at a rate of four and one-quarter dollars ($4.25) per day of ten hours."

The plaintiff states in his petition that the defendant had breached this contract in the following particulars, namely: That the plaintiff, with defendant's knowledge and consent, had supervised the work of grading and hauling and had furnished the necessary teams, scrapers, plows, wagons, and other hauling equipment to do the scraping, hauling, and other work specified in the contract and required in the construction of section A of the southern outfall sewer, Louisville, Ky., and had continued to do all the work required by the contract until October 16, 1908, on which date the defendant arbitrarily, wrongfully, and in violation of the contract stipulations discharged plaintiff from said work of hauling, supervising. etc., and did not permit him to continue on said work, but required him to remove from the premises all said teams, equipment, wagons, etc., although plaintiff was ready and willing and offered to perform his part of the contract according to its terms. The petition then avers that it was contemplated, intended, and agreed in said contract that the plaintiff was to do all the work of supervising and all the hauling and other things specified to be done in the contract for and in the work of constructing said section A of said outfall sewer. The petition then proceeds to specify the work that would have been done and the profit that could and would have been made by plaintiff under the contract if he had been permitted to perform his part of it. The profits to him he alleges would have reached the sum of $11,444, and for that amount he prays judgment against the defendant.

The plaintiff being a citizen of Kentucky and the defendant a citizen of Ohio, on the defendant's petition the case was removed to this court. On February 14, 1910, the defendant filed its answer in two

paragraphs, but that pleading does not now concern us, except to say that it went altogether to the merits.

[1] On March 14, 1910, the defendant filed an amended answer, in which the then existing pendency of an action in the state court described in the amendment, and which was also commenced on November 25, 1908, is pleaded in abatement of the present action. Objection was made to the sufficiency of this plea, though this objection was not pressed until after the judgment in the state court suit was rendered. Nevertheless the general rule is explicitly established in the federal courts that, even if the causes of action set up in the two suits be identical, the pendency of a suit in a state court does not abate an action in the federal courts. Hunt v. New York Cotton Exchange, 205 U. S. 322, 339, 27 Sup. Ct. 529, 51 L. Ed. 821; Gordon v. Gilfoil, 99 U. S. 168, 25 L. Ed. 383, and many other cases. The objection must therefore be sustained independently of the question of whether the cause of action in the state court suit was the same as that set up by the plaintiff in this action—a question yet to be determined in another connection.

[2] On July 3, 1911, the defendant filed an amended and supplemental answer in which the judgment of the Jefferson circuit court in the action pending there, and which we will call the state court suit, was pleaded in bar of the relief claimed in this action. Recently the court sustained a motion to require the defendant to make this pleading more definite and certain, which was done by an amended and supplemental answer filed March 12, 1915. To this last pleading the plaintiff filed a demurrer, and thus the question now to be considered was raised. The last amended and supplemental answer sets forth the petition and other pleadings in the case referred to—the judgment of that court in that cause having already been shown in the former pleading—and pleads that judgment in bar of the relief sought by the plaintiff in this action, upon the ground that the judgment there was upon the same cause of action as that set up in this case.

An examination of the record thus brought under consideration clearly shows, stated briefly, that the plaintiff there sought to recover, under the contract we have set forth, for certain work specifically described, and which had been actually done by the plaintiff under the contract previous to the 16th of October, 1908, but for which the defendant had not paid the contract price. This general statement shows the precise nature of the claim of the plaintiff in the state court suit, and the judgment shows that it was upon the cause of action thus described that the recovery was had for part of the amount claimed. The judgment, in terms, extended no further.

Comparing the claims made in the state court suit with those we have hereinbefore described as being sued upon in this action, we perceive at once, first, that each of said claims grows out of the contract herein copied; second, that such of the claims as were made in the state court suit all arose out of a part performance by plaintiff of his work and duties under the contract prior to October 16, 1908, but for which payment had not been made by the defendant; third, that the claim made in this suit was for damages resulting after

October 16, 1908, from the act of the defendant in refusing to permit plaintiff to continue to perform the stipulations of the contract, and thus to earn what the contract entitled him to earn; that is to say, the plaintiff in the state court suit sought to recover for what he had earned under the contract, while in this action he seeks to recover for what he was prevented from earning; and, fourth, that the 16th day of October, 1908, marked the time up to which the plaintiff was permitted to earn something under the contract, and the date after which he was, by the defendant's act, prevented from earning anything.

It would seem, therefore, that the causes of action in the two suits were not identical, although they grew out of the one contract between the parties, and therefore that the judgment rendered by the state court, strictly speaking, was not for any part of the cause of action actually sued upon in this case. If this be so, an estoppel by previous judgment upon the same cause of action has not been shown and cannot be deduced from the averments of the amended and supplemental answer under consideration, unless the further facts about to be stated require a different conclusion.

The state court suit and this suit, as we have seen, were commenced in the Jefferson circuit court on the same day, to wit, on November 25, 1908. Process was served on the defendant on December 1, 1908. It removed this case to this court on its petition filed and bond given and approved on December 11, 1908, without any steps having been taken by it in the other suit (which we have called the state court suit) either, first, to compel the plaintiff to elect which suit he would prosecute; or, second, to consolidate the two actions into one, as is permitted under the Kentucky practice. Powell v. Weiler, 11 B. Mon. 186, 187. After the removal of this action to this court by the defendant, with the other action yet pending in the state court, of course nothing could then be done in the way of requiring the consolidation of the actions. On February 6, 1909, the defendant filed its answer in the state court suit, in which, after admitting its corporate existence and the execution of the contract, it denied all that plaintiff had alleged in his petition in that suit. Upon the issues thus made a trial was had, and the state court, on January 31, 1911, rendered judgment in plaintiff's favor for $225 and costs, which were paid.

[3] As already indicated, however, the defendant, on March 14, 1910, filed an amended answer, in which it pleaded the "pendency" of the state court suit in abatement of this suit. But, as we have also seen, the defendant, by removing the case to this court, brought itself within the rule that such a plea is not maintainable. Hunt v. N. Y. Cotton Exchange, 205 U. S. 339, 27 Sup. Ct. 529, 51 L. Ed. 821, and Gordon v. Gilfoil, 99 U. S. 168, 25 L. Ed. 383. But before the last-named step had been taken the defendant had, on February 14, 1910, by an answer then filed in this action, pleaded to the merits alone. Nevertheless, on July 3, 1911, after the judgment in the state court suit had been rendered on January 31, 1911, the defendant pleaded that judgment in bar of the relief sought by plaintiff in this action.

Section 83 of the Civil Code of Practice, so far as applicable, is as follows, viz.:

"Several causes of action may be united, if each affect all the parties to the action, may be brought in the same county, and may be prosecuted by the same kind of action; and if all of them be brought: (1) Upon contracts, express or implied."

Upon this section the defendant contended at the argument that, where two causes of action "may" be united, they "must" be united, and it was claimed that the authorities would support that construction. None were cited, however, and we think the contention cannot be maintained.

We do, however, think that, if the plaintiff in his two actions sued upon two separate causes of action which, under section 83 of the Code, might have been united, the defendant had the right, at its option, to compel a consolidation of the suits, and, not having done so, he waived that right. The duty, if it be such, of bringing only one suit where several causes of action existed which might have been joined, is one imposed for the benefit of a defendant, who might, for that reason, waive it. Possibly by very prompt action the consolidation might have been required and made before a removal which might have brought both suits here, but, whether so or not, the defendant, by voluntarily removing one suit, waived, first, all right to insist that there ought to have been a consolidation, inasmuch as the defendant had prevented that course by the removal of one of the suits to another tribunal; and, second, all right to insist that the plaintiff should have been required to make an election which one of the suits it would prosecute.

True, the defendant has not insisted that there should have been an election or a consolidation; but we refer to those rights as indicating the two things available to the defendant, if the causes of action were separate, and how it may have waived or lost those rights. We think the fact that both suits were commenced on the same day rather emphasized the need for prompt action if, for defendant's benefit, the law authorized it to insist upon an election between, or a consolidation of, the two suits. A technicality which, under the circumstances developed by the record, would deprive the plaintiff of the right to a hearing on the claim made in this case, does not commend itself as being entitled to high favor.

· We have already indicated our opinion to be that the two suits were based upon two separate and distinct matters or causes of action, notwithstanding the fact that both grew out of the same contract. That growth was at different times and out of different acts. One cause of action arose before October 16, 1908, and was perfect without reference to the other, which arose afterwards. It stood upon a state of fact totally different in nature from the other, inasmuch as it was bottomed upon a failure to pay money which had been earned, while the other was for the tortious deprivation of a contract right to earn money. Certainly it is not always easy to determine between what is a single cause of action, which may not be split up, and what are two separate causes of action, which may be united in a single suit. The Supreme

Court in the Haytian Republic, 154 U. S. 125, 14 Sup. Ct. 994, 38 L. Ed. 930, after very clearly stating the general rule, which forbids the splitting up of a single cause of action, and after quoting from Stark v. Starr, 94 U. S. 485, 24 L. Ed. 276, said:

"This statement, however, is qualified by the following, which is not included in the citation: 'But this principle does not require distinct causes of action—that is to say, distinct matters—each of which would authorize by itself independent relief, to be presented in a single suit, though they existed at the same time and might be considered together.' The qualification states the elementary rule. One of the tests laid down for the purpose of determining whether or not the causes of action should have been joined in one suit is whether the evidence necessary to prove one cause of action would establish the other."

This authority and others which might be cited support, as we think, the view we have taken. The case of Perry v. Dickerson, 85 N. Y. 345, 39 Am. Rep. 663, is also instructive in this connection.

But the defendant further, and it may be somewhat inconsistently, contends that there was really only one cause of action, and that plaintiff unwarrantably split that one cause of action into two parts, and brought a separate suit upon each part. Counsel cite in support of this perfectly well settled general proposition the cases of Cole's Adm'r v. I. C. R. R. Co., 120 Ky. 686, 87 S. W. 1082, Pilcher v. Ligon, 91 Ky. 228, 15 S. W. 573, Covington & C. R. R. Co. v. Kleymeier, 105 Ky. 609, 49 S. W. 484, Harp v. Southern Railway Co., 150 Ky. 564, 150 S. W. 663, Bucki Lumber Co. v. Atlantic Lumber Co., 109 Fed. 411, 48 C. C. A. 455, Claflin v. Mather, etc., Co. (C. C.) 87 Fed. 795, and Louisville Bridge Co. v. L. & N. R. R. Co., 116 Ky. 258, 75 S. W. 285. All of these cases have been examined, and they certainly establish, just as do cases from the Supreme Court of the United States, the general rule against the splitting up of a single cause of action and bringing two suits where only one was proper.

Of course, if there were, as we think was the case, two separate and "distinct matters" (using the language of the Supreme Court) or causes of action, the objection as to splitting them up does not lie. But if there were only one cause of action, and if it were in 1908 split into two parts, and a suit brought upon each, we nevertheless think the facts of this case, as disclosed by the record, may sufficiently show that this fault may be held to have been waived by the defendant. It had removed one of the actions in 1908, and thereby put it out of the power either of the state court or this court to require either an election or a consolidation. It had answered to the merits on February 14, 1910, before any objection was made to anything the plaintiff had done. Afterwards the pendency of the state court suit was pleaded in abatement. True, in their argument counsel for the defendant insist that the plea in abatement (as we may call the amended answer filed March 14, 1910) was "notice" to plaintiff of the claim that his cause of action had been split up. We doubt whether the mere mention in that pleading of this claim that a cause of action was split was material, because in fact the defendant though it mentioned the splitting, only insisted in the prayer of the amended petition that the *pendency* of the state court suit should be held to abate this action—the alleged splitting of

the cause of action being mentioned apparently only casually. The conclusion that any *objection* was being made on that ground would, in view of the prayer of the amendment, have to be very subtly drawn. Besides, the amended answer was in its nature dilatory, and probably it came too late, as an answer to the merits had been previously filed.

A careful examination of the opinion of the Court of Appeals of Kentucky in the case of Louisville Bridge Co. v. L. & N. R. R. Co., 116 Ky. 259, 75 S. W. 285, has convinced us that the rule in this state is that the defendant, by letting the two cases run along as they did up to the time it filed its answer to the merits and afterwards, must be considered as having waived its right to insist upon the rule against the splitting of causes of action and the estoppel or bar which may in proper cases result from that course. And this view seems to find much support in the decision of the same court in Harp v. Southern Railway Co., 150 Ky. 568, 150 S. W. 663, where the court shows that the rule is for the benefit of the defendant who may therefore waive it.

The demurrer to the amended answer filed February 14, 1910, and which pleads the pendency of the state court suit in abatement of this action, must be sustained.

But whether the matters to which we have referred as indicating a waiver by the defendant of the right to object to the alleged splitting up of what defendant insists is plaintiff's single cause of action are brought under review by the plaintiff's demurrer to the amended and supplemental answer filed March 12, 1915, may admit of doubt. For that reason, while we think there were two separate and distinct matters, each of which constituted a separate cause of action and therefore that the demurrer to the last-named pleading is well taken, it may be better to overrule the last-named demurrer pro forma, and in this way give the plaintiff an opportunity, if so advised, to set up in a reply the matters referred to as indicating a waiver.

The demurrer to the amended and supplemental answer filed March 12, 1915, is overruled, and the plaintiff will be given 30 days within which to file a reply.